**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

DEBRA HAMILL,

      Plaintiff,

v.                                  Case No. 6:18-cv-1260-Orl-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

      Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Following an administrative video hearing held on July 17, 2017, the assigned Administrative Law Judge ("ALJ") issued a decision finding Plaintiff not disabled from March 5, 2014, the alleged disability onset date, through September 21, 2017, the date of the decision.[2] (Tr. 36-45.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 16.)

[2] Plaintiff had to establish disability on or before December 31, 2018, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 36.)

**I.     Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

**II.    Discussion**

Plaintiff argues that a remand is necessary because (1) the ALJ's reasons for rejecting Plaintiff's testimony about her pain were not supported by substantial evidence and (2) the record did not support the ALJ's findings that Plaintiff's

anxiety and depression were non-severe impairments. Defendant responds that substantial evidence supports the ALJ's analysis at step two of the sequential evaluation process and that the ALJ properly evaluated Plaintiff's subjective complaints.

### A. Standard for Evaluating Opinion Evidence and Subjective Symptoms

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5)

specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). "However, the ALJ is not required to explicitly address each of those factors. Rather, the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam), 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining

4

sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

When a claimant seeks to establish disability through her own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id*.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that her pain is disabling through objective medical evidence from an acceptable medical source that shows a medical impairment that could reasonably be expected to produce the pain or other symptoms, pursuant to 20 C.F.R. §§ 404.1529(a), 416.929(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561. *See also*

5

SSR 16-3p[1] (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to perform work-related activities").

As stated in SSR 16-3p:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.
> . . .
> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[2] The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer

---

[1] SSR 16-3p rescinded and superseded SSR 96-7p, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p.

[2] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.

can assess how the adjudicator evaluated the individual's symptoms.
. . .
In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" will also be considered "when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities." *Id.* "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* In considering

7

an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her stressors;
- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;
- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;
- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;
- That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

### B. The ALJ's Decision

At step two of the five-step sequential evaluation process,[3] the ALJ found that Plaintiff's degenerative disc disorder was a severe impairment.[4] (Tr. 38-39.) At step three, the ALJ found that Plaintiff did not have an impairment or

---

[3] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

[4] The ALJ found that Plaintiff's obesity and mental impairments, including anxiety, depression/affective disorder, and somatoform disorder, were non-severe. (Tr. 39-40.)

combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 41.)

The ALJ then found that, through the date of the decision, Plaintiff had the residual functional capacity ("RFC") to perform light work, but with the following limitations:

> . . . the climbing of ramps, stairs, ladders, ropes, scaffolds, balancing, stooping (bending at the waist), kneeling, crouching (bending at the knees), and crawling must be limited to occasionally. In addition[,] with the assigned workspace, there must be less than occasional (seldom/rare) exposure to hazards, such as unprotected heights or moving machinery.

(*Id.*) In making these findings, the ALJ stated she had considered Plaintiff's statements and testimony regarding Plaintiff's symptoms and the opinion evidence. (Tr. 41.) The ALJ noted that Plaintiff alleged "disability due to spinal stenosis[,] nerve damage in [her] foot[,] ocular herpes[,] herniated disc[,] bulging disc[,] high blood pressure[,] anxiety[,] and high cholesterol." (*Id.*) The ALJ noted that Plaintiff claimed she stopped working in March 2014 due to her conditions, and that since filing her claim, her symptoms had worsened. (Tr. 42.) The ALJ also considered Plaintiff's adult function reports and anxiety and pain questionnaires and noted that Plaintiff's statements were of the same nature as the subjective complaints she testified to during her hearing. (*Id.*) The ALJ noted that Plaintiff reported "difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, climbing stairs, seeing, memory [sic],

9

completing tasks, concentrating, understanding, following instructions, and using her hands." (*Id.*)

The ALJ then summarized Plaintiff's hearing testimony as follows:

> The claimant testified that she [was] unable to work because she [was] in constant pain. She report[ed] she [was] unable to stand for "any length of time" and her spine hurt[] "a lot." She also testified her prescribed medications cause[d] side effects, including constipation, liver problems, and balance problems. The claimant testified she [did] not take illegal drugs; however, when I asked again, she admitted to the use of marijuana on occasion and she reported she d[id] not have a medical card for this use. The claimant testified she ha[d] a difficult time lifting her dog, who [weighed] 12 pounds. She testified as well [that] she [was] able to sit to watch a half hour show and [was] able to stand for approximately 30 minutes. The claimant testified her doctor prescribed a walker, but the claimant brought a cane, rather than the walker, to the hearing. The claimant testified she forg[ot] things and reported she suffer[ed] from severe mental health problems. The claimant also testified she live[d] with her ex-husband.

(*Id.*) The ALJ then found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ then noted that, "considering the subjective factors in this case pursuant to SSR 16-3p and 20 C.F.R. [§§] 404.1529 and 416.929," Plaintiff's allegations were analyzed in terms of:

> [d]aily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; any measure

10

>other than treatment an individual uses or has used to relieve pain or other symptoms; and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

(*Id.*) The ALJ then concluded that "[g]enerally, [Plaintiff's] statements that she [was] disabled and unable to work [were] inconsistent with the medical evidence of record" and were therefore inconsistent with the ALJ's determination. (*Id.*)

In assessing Plaintiff's RFC, the ALJ summarized the objective medical evidence as follows:

>The claimant suffer[ed] from degenerative disc disorder. An MRI of the claimant's lumbar spine showed multilevel degenerative changes with diffuse disc bulge, osteophytes, arthrosis, and some foraminal narrowing (Exhibit 8F/4, see also 7F). However, straight leg raising test was negative bilaterally (Exhibit 12F/3). She underwent a laminectomy/foraminotomy and facet thermal ablation in 2013 (Exhibit 12F/2). The claimant was diagnosed with post-laminectomy syndrome (Exhibit 12F/4). She was prescribed a variety of medications including baclofen, oxycodone, morphine, and MS Contin (Exhibit 12F/4). Additionally, the claimant was "strongly advised" to lose weight to reduce pressure on her joints and lower back (Exhibit 12F/4). She was instructed to diet and exercise in order to lose weight (Exhibit 12F/4). The medical evidence of record document[ed] the claimant walk[ed] with an antalgic gait. She use[d] an assistive device (Exhibit 12F/3, l0F/1). Generally, this assistive device ha[d] been a single point cane, although the claimant alleged she was prescribed a walker.

(Tr. 42-43.) The ALJ then found that, due to Plaintiff's degenerative disc disorder and associated pain, she experienced limitations in the ability to perform postural activities. (Tr. 43.) The ALJ also found that Plaintiff's exposure to hazards must be limited due to her gait problems and the side effects of the narcotic pain medications. (*Id.*)

With respect to Plaintiff's allegations of pain, the ALJ summarized the evidence as follows:

> The medical evidence of record documents consistent complaints of debilitating pain. For example, the claimant continually reports pain, which she classifies as mid to low back pain that radiates into the bilateral lower extremities (Exhibit 12F/1). She reported difficulty walking, bending, and lifting (Exhibit 12F/1). She reported frequent falls due to bilateral leg numbness (Exhibit 12F/1). The claimant reported difficulty with activities of daily living such as dressing (Exhibit 12F/6). The claimant was diagnosed with fibromyalgia based primarily on her reports of widespread pain and weakness (Exhibit 12F/4). [She was] [p]rescribed Elavil for fibromyalgia (Exhibit 12F/4).

(*Id.*) The ALJ then summarily stated that she had "considered the claimant's allegations of pain when determining" Plaintiff's RFC. (*Id.*)

The ALJ then accorded great weight to the opinion evidence of James Patty, M.D., a State agency consultant, that Plaintiff could perform light exertional work and was limited to occasional postural limitations.[5] (*Id.*) The ALJ explained that although Dr. Patty was a non-examining medical source, his opinion was entitled to great weight because it was supported by the medical evidence. (*Id.*) The ALJ found that Dr. Patty's RFC assessment was reasonable and consistent with the objective medical evidence, but based on the totality of the evidence presented, she found it reasonable to limit Plaintiff's exposure to hazards. (*Id.*)

The ALJ accorded "some weight" to the opinions of State agency psychological consultants Michael Zelenka, Ph.D. and Deborah Carter, Ph.D.

---

[5] Dr. Patty completed a residual functional capacity assessment on June 3, 2015 following a review of the records. (Tr. 142-46.)

(*Id.*)  The ALJ found that Dr. Zelenka's and Dr. Carter's opinions that Plaintiff's mental impairments were non-severe, despite being based on the old listings, were consistent with the ALJ's findings.  (*Id.*)  The ALJ also accorded partial weight to the January and April 2015 third-party function reports completed by Plaintiff's ex-husband and caretaker, Jeffrey Hamill.  (Tr. 44.)  The ALJ found Mr. Hamill's statements regarding Plaintiff's daily activities, *i.e.*, that she was able to drive, shop, and manage her finances, and that she read and watched television for pleasure, to be consistent with other evidence of record regarding Plaintiff's daily activities and functional limitations.  (*Id.*)  The ALJ concluded that the RFC determination was based on "the objective medical evidence of record, such as hospital and treatment records[,] as well as the subjective evidence consisting of the testimony and previous statements of the claimant as to her abilities to complete daily activities."  (*Id.*)

The ALJ then determined that, based on the testimony of the vocational expert ("VE"), Plaintiff was capable of performing her past relevant work as a general merchandise salesperson and as a real estate agent as generally performed.  (*Id.*)  Thus, the ALJ found that Plaintiff was not disabled at any time from March 5, 2014, the alleged onset date, through September 21, 2017, the date of the decision.  (Tr. 45.)

### C. Analysis

The Court agrees with Plaintiff that the ALJ erred in her evaluation of Plaintiff's subjective complaints in determining the RFC.  Although the ALJ found

13

that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not "entirely consistent with the medical evidence and other evidence in the record." (Tr. 42.) In discrediting Plaintiff's subjective complaints, the ALJ stated that she had considered the subjective factors pursuant to SSR 16-3p, 20 C.F.R §§ 404.1529, 416.929, which she merely listed. (*Id.*) Rather than specifically discuss the factors pursuant to SSR 16-3p, the ALJ summarily concluded that Plaintiff's "statements that she [was] disabled and unable to work [were] inconsistent with the medical evidence of record and therefore inconsistent with [her] determinations." (*Id.*)

In support of the RFC finding, the ALJ referred to Plaintiff's underlying physical conditions, prescribed medications, her use of an assistive device, and found that, based on Plaintiff's degenerative disc disorder and associated pain, Plaintiff experienced limitations in her ability to perform postural activities and limited in her exposure to hazards. (Tr. 43.) Although the ALJ acknowledged that the record reflected Plaintiff's consistent complaints of debilitating pain and noted Plaintiff's fibromyalgia diagnosis, the ALJ merely stated that she had "considered the claimant's allegations of pain when determining [] the claimant's residual functional capacity." (*Id.*) In support of her decision, the ALJ also cited to and provided great weight to the June 2015 opinion of non-examining State

14

agency consultant, Dr. Patty, that Plaintiff was capable of performing light exertional work and that she was limited to occasional postural activities.[6] (*Id.*)

As Plaintiff correctly argues, her failed lumbar laminectomy/foraminotomy and failed facet thermal ablation (Tr. 542, 545), her inability to go forward with recommended lumbar fusion surgery due to insurance and financial issues (Tr. 423-27, 557), and her lack of improvement despite an aggressive pain management plan including morphine and other narcotic pain medication (Tr. 546, 553, 556-57, 588, 614, 623, 628, 638-39, 642, 648), "support[] her testimony that she has a crippling level of pain." (Doc. 18.) The overall medical record consistently shows that Plaintiff suffered from severe pain and required surgery. (*See, e.g.*, Tr. 427 ("The patient follow[ed] up for further discussion for closed left

---

[6] The ALJ also gave partial weight to Plaintiff's ex-husband's statements and appears to have found that his statements regarding Plaintiff's activities of daily living (driving, shopping, reading, watching television) supported the RFC finding. (Tr. 44.) However, the performance of limited daily activities is not necessarily inconsistent with allegations of disability. *See, e.g.*, *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985) (per curiam) (reversing and remanding the case to the Commissioner for lack of substantial evidence to support the finding that the claimant had no severe impairment, even though the claimant testified that she performed housework for herself and her husband, accomplished other light duties in the home, and "was able to read, watch television, embroider, attend church, and drive an automobile short distances"); *White v. Barnhart*, 340 F. Supp. 2d 1283, 1286 (N.D. Ala. 2004) (holding that substantial evidence did not support the decision denying disability benefits, even though the claimant reported that she took care of her own personal hygiene, cooked, did housework with breaks, helped her daughter with homework, visited her mother, socialized with friends sometimes, and, on a good day, drove her husband to and from work, but needed help with grocery shopping, and could sit, stand, or walk for short periods of time). Rather, the record shows that Plaintiff's activities of daily living were "very" limited, and demonstrates that she needed assistance with bathing, dressing, grooming, and walking and that she relied primarily on her ex-husband for help. (*See, e.g.*, Tr. 310-17; Tr. 611.)

L5-S1 OLIF.  She again reviewed symptomology and progressive[ly] increasing back pain and left greater than right lower extremity radicular symptoms.  The planned procedure was again discussed in detail.  She seem[ed] to be more comfortable with the idea [of] proceeding with surgery due to her increased intolerable pain and escalating medication requirements.  Surgery will be scheduled accordingly."); Tr. 546 ("Mrs. Hamill has suffered from chronic disabling pain which has caused psychological, social, and physical impairment.  She has tried unsuccessfully to have this pain relieved using conservative treatment for pain management. . . .  Mrs. Hamill ha[d] several points of tenderness along the lower back musculature and several points of tenderness along the mid back musculature necessitating separate trigger point injections on the affected areas.  It [was] a medical necessity that the patient [underwent] intervention of pain management to alleviate the painful syndrome and to return to a more functional quality of life. . . .  An attempt to alleviate the patient['s] [pain] with a less invasive treatment ha[d] not been successful."); Tr. 611 ("The patient report[ed] that she ha[d] been in constant pain which [made] her feel very depressed and dysfunctional.  Patient report[ed] difficulty sleeping at night.  She [was] very limited in her [activities of daily living] [and] need[ed] assistance with dressing and walking as associated symptoms.  The patient use[d] a [cane] to assist with ambulation.").)

     Here, the ALJ failed to provide adequate reasons for rejecting Plaintiff's testimony regarding her pain.  The ALJ's failure to clearly articulate specific

reasons for discounting Plaintiff's testimony regarding the severity and limiting effects of her pain, or how her pain symptoms and the limiting effects thereof were inconsistent with the medical evidence, prevents the Court from determining whether the ALJ properly evaluated Plaintiff's symptoms. *See* SSR 16-3p ("In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). When "an ALJ discredits a claimant's testimony, the ALJ must articulate, explicitly and adequately, reasons for not crediting the testimony." *Gray v. Comm'r of Soc. Sec.*, No. 8:17-cv-1157-T-JSS, 2018 WL 3805866, *6 (M.D. Fla. Aug. 10, 2018) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223–24 (11th Cir. 1991)). "'Implicit in this rule is the requirement that such articulation of reasons . . . be supported by substantial evidence.'" *Gray*, 2018 WL 3805866, at *6 (quoting *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

Based on the foregoing, the ALJ's evaluation of Plaintiff's subjective complaints, in light of the record as a whole, is not supported by substantial evidence.[7] Therefore, this case will be reversed and remanded with instructions to the ALJ to reconsider Plaintiff's subjective complaints and the medical record as a whole.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g) with instructions to the ALJ to: (a) reconsider Plaintiff's subjective complaints; (b) re-evaluate Plaintiff's RFC assessment, if necessary; and (c) conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42*

---

[7] Because the Court reverses based on the first issue raised by Plaintiff, the Court does not fully analyze the second issue raised on appeal. Nevertheless, the Court finds that the ALJ also committed reversible error in failing to consider, "severe or not," Plaintiff's mental impairments when assessing the Plaintiff's RFC and, "as a result of this error," the Court cannot find that the ALJ's failure to consider Plaintiff's mental impairments as severe was harmless. *See Schink v. Comm'r of Soc. Sec.*, --F.3d--, No. 17-14992, 2019 WL 4023639, at *17 (11th Cir. Aug. 27, 2019) ("In short, the ALJ provided no real assessment of how Schnick's mental impairments—including depression, mania, and ager—affected his ability to work. The assessment was therefore inadequate.").

*U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** in Jacksonville, Florida, on September 23, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record